GRAYBEAL *v.* SMITH.

(*Knoxville,* September Term, 1949.)

Opinion filed December 17, 1949.

Baumgardner, Baumgardner & Eden, of Bristol, for plaintiff in error.

Bandy & Bandy, of Kingsport, H. H. McCampbell, Jr., of Knoxville, for defendant in error.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a compensation case in which the only question presented is whether or not there is any material evidence to sustain the judgment of the trial judge.

The petitioner qualified as administratrix of the estate of Charlie Lingerfelt, who suffered an injury while working in a rock quarry that was owned and operated by Walter S. Smith, and sued to recover compensation for his death, the same being for the benefit of his three minor children, aged 8, 10 and 14 years respectively.

The following averments are made in the petition: "On April 10th, 1947, the deceased Charlie Lingerfelt, able-bodied and a good wage earner, sustained injuries in the course of his employment as a skip operator and rock driller of the said Defendant on the premises above described. While working with a fellow employee, Kirk Stevens, the rock and ground upon which both were standing gave way and the said Charlie Lingerfelt fell vertically downwardly approximately 45 to 50 feet from where he was standing. Both of Lingerfelt's feet received multiple fractures, his ankles were crushed, he suffered serious spinal injuries and other bodily injuries, all of which required his staying in the King's Memorial Hospital, Bristol, Virginia for a period of thirty days after his admittance on April 10, 1947. On or about May 10th, 1947, he was released from said hospital, and then was bedfast at home almost three months, afterwards walking on crutches for a long period of time; and later, oftentimes, it was necessary for him to walk and stand on his knees while preparing meals for his three small, motherless children. The deceased, after the date of the injury, became permanently totally disabled and continued permanently totally disabled until the severe mental and physical suffering and agony, and nervous strain, from his disability caused his death on Christmas day, December 25, 1948, at the age of thirty-nine."

An answer was filed to the petition in which defendant denied his liability as follows: "This defendant avers that the injuries sustained by the said Charlie Lingerfelt on April 10, 1947, were in no way connected with or contributory to his death, which occurred on December 25, 1948."

The trial judge, after due consideration of all the evidence, found as follows:

"I find several things, for instance the serious extent of the injuries to the deceased's legs and back as shown by the X-rays and testified to by the physicians and the lay witnesses who testified with reference to his crawling around on his hands and knees and his continually complaining of and treating his feet and having his back rubbed, and the physicians who all testify to the seriousness of this man's injuries and the condition of his body upon his death as testified to by the undertaker all show that this man was seriously injured and remained in a serious condition from the time of the injury up until the time of his death.

"Under the proof in the case there is no reason given for this man's death other than the accident and certainly the evidence and the history of the case from the time of the injury to his death as it appears from the proof in this case is sufficient to convince the Court that his death was due to the injury, and the Court so finds."

We think there is some material evidence to support the trial judge that the injury was *contributory* to his death. There is no question but that Lingerfelt suffered severe injuries as the result of his fall in the defendant's rock quarry. He suffered multiple fractures of bones in his feet which were so serious that he was never able to walk. There is convincing evidence, in that it is not controverted, that for some time prior to his death he walked on his hands and knees. At the time of his death his legs from his "knees down" had a distinct discoloration, having the appearance of gangrene. He also suffered compressed fractures of three vertebrae to which his ribs were attached.

The following testimony of Dr. Stout, a medical expert, was offered by petitioner:

"Q. Dr. Stout, if no other cause or reason was assigned it would be a right safe conclusion of death?

Objection by defendant's counsel.

"The Court: I will let him answer.

"Q. If no other reason or cause could be assigned to his death where traumatic injury had been suffered to the spine, fractured three of his vertebrae, it would be your conclusion or opinion that that caused it? A. Yes, sir, I think it would."

The following question was asked by the court:

"Q. Is there any other way than you have said could have caused or contributed to his death rather than blood clot? A. Probably circulation, pressure to the spine and nerves or some of the vital parts, organs of respiration or lungs, or perhaps the heart or the kidneys causing suppression of urine, something like that."

The witness had previously stated the fractured vertebrae should have healed within a period of six months. He was giving his opinion that the injuries could have contributed to his death, not that they actually caused it.

Another medical expert, an X-ray specialist, Dr. McCall, testified as to multiple fractures of the spine and feet. In response to a question "if the fall and injury either caused or contributed to his death", answered: "Well, sir, that is a hard question. I should say that indirectly it might contribute to it, but I don't know that I would go so far as to say that it caused it." He further stated "I would have to agree that it could affect the general over-all health of the man." Dr. Snapp who attended Lingerfelt almost daily, described his con-

dition and gave it as his opinion that his injuries "could be contributory" to his death.

The defendant offered expert medical testimony (Dr. Kuhnert and Dr. Bachman) to the effect that the injuries did not in their opinion cause his death.

There is no evidence in the record direct or circumstantial tending to show that the injured employee died from any cause other than from injuries which he had sustained.

We have repeatedly held, as in *Home Ice Co.* v. *Franzini*, 161 Tenn. 395, 32 S. W. 2d 1032, that a judgment cannot rest upon conjecture. But in the instant case the findings of the trial judge and his judgment are not a matter of conjecture. We concede that the evidence as to the cause of death is not strong, but it is sufficient to make an issue to say the least of it.

If it is found that there is any material evidence to support the trial judge's finding of facts, it will be treated as conclusive, although there is a preponderance of evidence against it. *Vester Gas Range & Mfg. Co.* v. *Leonard*, 148 Tenn. 665, 257 S. W. 395; *Bon Air Coal & Iron Corp.* v. *Johnson*, 153 Tenn. 255, 283 S. W. 447; *Ware* v. *Illinois Cent. Ry.*, 153 Tenn. 144, 281 S. W. 927.

In *McBrayer* v. *Dixie Mercerizing Co.*, 178 Tenn. 135, 156 S. W. 2d 408 and *Diamond Coal Co.* v. *Jackson*, 156 Tenn. 179, 299 S. W. 802, it was held: "In compensation case, findings of fact by the trial judge will not be disturbed by reviewing court if sustained by any material evidence."

In *Benjamin F. Shaw Co.* v. *Musgrave*, 189 Tenn. 1, 222 S. W. 2d 22, 26, the deceased was disabled by a heart ailment. He later suffered (or claimed that he did) an

injury to his chest resulting from repeated blows on his chest by pieces of timber with which he was compelled to work. The case turned upon the admissibility of testimony by medical experts. But the weight of it was held to be a question for the trial court. In that case the medical experts disagreed as to the cause of the injury. Since the trial judge found that the injuries in the instant case were a contributing cause, and there is material evidence to support his finding, we must affirm the judgment.

In speaking with reference to the issue in *Benjamin F. Shaw Co.* v. *Musgrave,* Mr. Justice Burnett pointedly and correctly observed: "It seems to us that in a disputed question of fact under testimony of this kind, highly technical, that the trier of facts should be left free to adopt that view which is most consistent with reason and justice."

The assignments of error are overruled and the judgment of the court below is affirmed.

All concur.