Larry CAMERON, Plaintiff/Appellee,

v.

KITE PAINTING COMPANY, Defendant/Appellant,

and

Sue Ann Head, Director of the Division of Workers' Compensation, Tennessee Department of Labor, Second Injury Fund, Defendant/Appellant.

Supreme Court of Tennessee, at Nashville.

Aug. 2, 1993.

---

Charles W. Burson, Atty. Gen. & Reporter, Dianne Stamey Dycus, Asst. Atty. Gen., Nashville, for defendant/appellant.

Richard T. Matthews, Columbia, for plaintiff/appellee.

## OPINION

O'BRIEN, Justice.

This is an appeal by the Director of the Tennessee Division of Workers' Compensation, Second Injury Fund, defendant/appellant, from a workers' compensation judgment in the Circuit Court of Maury County.

On 20 December 1991, after a number of preliminary proceedings, including an order for the resumption of the payment of temporary total disability benefits and certain medical expenses by the defendant, Kite Painting Company, the trial judge made specific findings. He entered an order including in pertinent part that at the time plaintiff was injured in the course of his employment with Kite Painting Company he had a substantial preexisting partial disability resulting from previous back injuries and surgeries, a previous foot injury, high blood-pressure and a severe speech impediment which significantly impaired his earning capacity and ability to compete in the labor market. He held that the employer had knowledge of plaintiff's previous injuries and the congenital speech impediment and knowledge that the plaintiff was permanently partially disabled as a result of these conditions. He found plaintiff to be 100% completely and totally disabled as the direct, proximate result of the combined injuries and disabilities referred to and that portion of the total permanent disability attributable to the last injury sustained by plaintiff while in the employment of Kite Painting Company was thirty percent (30%).

He awarded judgment against defendant, Kite Painting Company for thirty percent (30%) of a 100% total disability for a total of 120 weeks, in the sum of $30,240 of which 104 weeks had accrued in the amount of $26,208. He credited the defendant with the amount of temporary total disability benefits previously paid and directed the remainder to be paid at the rate of $252 per week for 16 weeks. He directed payment of all medical and medically related expenses set forth in T.C.A. § 50-6-204.

He assessed payment against the Second Injury Fund for seventy percent (70%) of the total award which was calculated at $252 per week for 280 weeks, totalling $70,560. The combined award was $108,000, the maximum benefit to which plaintiff was entitled under T.C.A. § 50-6-102(a)(6) (Supp.1989). The defendant, Second Injury Fund, filed a notice of appeal from this order.

On 27 January 1992 an agreed order was entered on the application of the plaintiff, his employer, and the employer's insurance carrier to compromise and settle the matter. The trial court found that plaintiff would have been entitled to temporary total disability benefits for a total of 66 weeks at the rate of $250 per week for a total of $16,632, which plaintiff expressly acknowledged had been paid to him. He found that all outstanding medical bills and expenses had been paid to date, or that Kite Painting Company assumed responsibility for their payment, including the agreement to provide medical care to plaintiff pursuant to T.C.A. § 50-6-204 through and including 15 November 1992, exclusive of any psychiatric and psychological care or treatment. He further found that a legitimate controversy existed between the parties concerning the amount of permanent partial disability benefits properly owed by defendant to the plaintiff, as well as a controversy concerning further medical bills, all of which the parties agreed to compromise and settle in their entirety upon payment of the lump sum of $60,000. He found this

payment was made in satisfaction of all claims by the plaintiff for permanent partial disability and for future medical expenses and was the equivalent of an award of sixty percent (60%) permanent partial impairment to the body as a whole. The order held that upon payment of the sum of $60,000 the employer and its insurance carrier were relieved of any further liability to the plaintiff and all matters relating to the claim of plaintiff against the second injury fund remained unabated or undiminished by the settlement.

█ The first issue raised by the appellant, Second Injury Fund, is whether the trial court erred in determining if the plaintiff was entitled to seventy percent (70%) disability from the Fund. We hold that it did not.

This is a plain case, clearing falling within the provisions of subsection (a)(1) of T.C.A. § 50-6-208 which holds: "If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled under this chapter from the employer or the employer's insurance company; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the 'Second Injury Fund' therein created."

As previously noted the trial court found that at the time of plaintiff's injury while in the employment of Kite Painting Company he had a substantial preexisting partial disability resulting from previous back injuries and surgeries, a previous foot injury, high blood-pressure and a severe speech impediment which the Court found significantly impaired his earning capacity. Plaintiff was found to be 100% completely and totally disabled and the portion of the total permanent disability attributable to the last injury sustained by plaintiff while in the employment of the defendant was thirty percent (30%). The court assessed the additional seventy percent (70%) of the 100% total disability award against the Second Injury Fund, which is in accordance with subsection (a)(1) of the statute. We discount plaintiff's stuttering impediment which the record clearly shows was congenital and his long work record reflects that it did not impede him in that respect. His high blood pressure was barely mentioned in one of plaintiff's work applications and there is no evidence in his work history that it was an impediment. However, the first of a long series of back injuries and resulting operations plaintiff sustained was not the result of a workers' compensable injury. The employer conceded that he was 100% disabled and there is nothing in the record to indicate the Second Injury Fund disputed that finding by the trial judge. Our de novo review of the record satisfies us that the trial court's finding was correct.

By its second issue the appellant questions whether the trial court erred in determining that the employer was entitled to a credit for temporary total disability benefits.

The original order of 20 December 1991 did state that the employer was to pay thirty percent (30%) of the total disability award in the sum of $30,240 after credit for the amount of temporary total disability payments previously paid. Regardless of that statement in the original order it appears clear from the context of the agreed order of 27 January 1992 that plaintiff had been paid a total of $16,632 for 66 weeks temporary total disability compensation which was not credited against the agreed settlement. In the settlement order the trial court found that there was a legitimate controversy between the parties concerning the amount owed or owing by defendants to the plaintiff, as well as the controversy concerning further medical bills. There is no reason why the parties could not reach an agreed settlement of the employer's liability for thirty percent (30%) of the court's original judgment or why the plaintiff could not agree to a settlement of his future medical bills and expenses. The settlement agreement did not provide, as

stated in the Second Injury Fund's brief, that the plaintiff was entitled to sixty percent (60%) permanent partial disability to the body as a whole to be paid by Kite Painting Company in a lump sum. It did say that the lump sum compromise and settlement award of $60,000 was equivalent to an award of sixty percent (60%) permanent partial impairment to the body as a whole and was made in satisfaction of all claims by the plaintiff against the employer and his insurance carrier for permanent partial disability and for future medical expenses. The court found that settlement of this part of the claim by these defendants to be in plaintiff's best interest.

The plaintiff in this case urges the court to overrule the decision in *Smith v. Liberty Mutual Ins. Co.*, 762 S.W.2d 883 (Tenn.1988). The Second Injury Fund submits that the decision in *Smith* is correct and should not be overruled. The *Smith* case followed the decision in *Hedges Manufacturing Co. v. Worley*, 223 Tenn. 102, 442 S.W.2d 624 (1969) and *Wiseman v. E'Con Mills, Inc.*, 517 S.W.2d 191 (Tenn.1974), holding that temporary total disability benefits are not to be deducted from the compensation payable by the employer. The court stated that the obligation of the employer is not only determined first but is to be paid first, and that the obligation of the Second Injury Fund is not concurrent with that of the employer but for the remainder of the compensation due employee until the statutory maximum has been paid.

We see no necessity for any reference to *Smith*, supra. In the judgment part of the agreed order the trial court spelled out that the payment of $60,000 represented the lump sum compromise and settlement payment for permanent partial disability to the body as a whole and for future medical bills and expenses with the understanding that Kite Painting would continue to be responsible through 15 November 1992 for the reasonable medical care of the plaintiff related to the injury, but exclusive of any psychiatric or psychological care or treatment. This Court interprets that order to mean that the employer owed an additional $13,608 to round out the remainder of its thirty percent (30%)

liability fixed by the trial court in its original decree. The balance of the $60,000 settlement was in lieu of any further liability for future medical bills and expenses which might be incurred by the plaintiff after 15 November 1992.

The Second Injury Fund notes in its brief that it was not provided with notice of the settlement agreement. This issue was not presented for review nor was any argument made. Nonetheless, we conclude that the fund was not entitled to notice of the settlement agreement under the facts of this case. T.C.A. § 50–6–206 provides in pertinent part that in all cases where settlement proceedings or any other court proceedings for workers' compensation involve a subsequent injury wherein the employee would be entitled to receive or is claiming compensation from the Second Injury Fund provided for in § 50–6–208, the Director of the Division of Workers' Compensation shall be made a party defendant to such proceedings and a staff attorney of the Department of Labor under the supervision of the Attorney General and Reporter shall represent the Director in such proceeding and the court by its decree shall determine the right of the claimant to receive compensation from such fund. In *Dailey v. Southern Heel Co.*, 785 S.W.2d 344, 346 (Tenn.1990), the Court said: "It is true that the statute does not explicitly provide a sanction for failure to make the Director a party prior to the settlement but we hold that it was the obvious and inescapable intention of the legislature in mandating the party status of the 'second injury fund' that it be a party with notice of any hearing for court approval of any settlement involving *potential liability of that fund*. Thus, absent party status and notice, the settlement is voidable at the option of the Director." (Emphasis supplied). The Director of the Division of Workers' Compensation was a party defendant in this case at the time the trial judge entered the judgment against the fund for seventy percent (70%) of a 100% total disability award. The Director was represented by counsel in that proceeding. The subsequent agreed settlement between the employer and the employee did not involve any potential liability of the fund. *Dailey*, supra at p. 346.

Thus, the Second Injury Fund was not entitled to party status or notice.

The judgment of the trial court is affirmed. The case is remanded to the trial court for such further proceedings as may be required in accordance with this opinion. Costs on this appeal are taxed to the employer and its insurance carrier.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.